Lea v. Dudley

LOIS G. LEA AND FRANK D. CUMMINGS v. GARLAND (GARFIELD) WALTER DUDLEY AND WIFE LOYCE GEORGIA DUDLEY, J. LEON DUDLEY AND WIFE MARGARET WATERFIELD DUDLEY, O. A. DUDLEY AND WIFE DOWE DUDLEY

No. 751SC663

(Filed 7 January 1976)

1. **Adverse Possession § 25— sufficiency of evidence**
    The evidence was sufficient for submission of an issue of title by adverse possession to the jury where the evidence was conflicting as to whether defendants' predecessor took possession as an agent or employee of a corporation and his possession was thus permissive.

2. **Adverse Possession § 25.1— instructions — possession with owner's permission**
    The trial court properly charged the jury that if defendants' predecessor entered into possession of land with permission of the owner, his possession would not be adverse until he disclaimed such arrangement in such manner as to put the owner on notice that he was no longer using the land by permission but was claiming it as absolute owner.

---

Lea v. Dudley

---

3. **Adverse Possession § 24— certificate of tax sale to possessor**
    Notice of a sheriff's levy and a certificate of tax sale of land to defendants' predecessor was relevant to show the hostile interest with which defendants' predecessor possessed the land and the notoriety of that possession.

4. **Adverse Possession § 24— declarations of ownership by possessor**
    Evidence of declarations by defendants' predecessor that he had bought the land in question and that it "belonged to him" was competent to show that defendants' predecessor claimed to possess the land as the real owner.

5. **Adverse Possession § 24— grant of easement by possessor**
    The court did not err in permitting a witness to testify that defendants' predecessor "signed an easement" across the property in question.

APPEAL by plaintiffs from *Rouse, Judge.* Judgment entered 7 March 1975 in Superior Court, CURRITUCK County. Heard in the Court of Appeals 18 November 1975.

This is an action by plaintiffs to remove a cloud from plaintiffs' alleged title to particularly described lands in northeastern Currituck County.

Defendants answered and alleged that they were the sole owners of the property and that they and their predecessors in title had possessed the lands under known and visable lines and boundaries, adversely to all other persons for more than 20 years next preceding the commencement of the action.

Plaintiffs introduced a 1914 deed conveying the property to Deals Island Ducking Club, Inc., a Virginia corporation. It was stipulated that upon recordation of that deed, the corporation had title to the property by a connected chain of title back to the State. The club stopped filing annual corporate reports in 1919. Fees were paid until 1929. The corporate charter was revoked in 1931 for failure to pay corporate franchise taxes. Plaintiffs acquired all of the stock in the corporation. On 20 July 1970 a court appointed receiver for the corporation conveyed the property to plaintiffs. *(See Lea v. Dudley,* 20 N.C. App. 702, 202 S.E. 2d 799.)

Plaintiffs introduced two deeds to the property that were executed in 1964. One was from defendants to W. L. Cogswell and the other was a deed from Cogswell to defendants. Plaintiffs contend that these deeds were a cloud on their title.

Lea v. Dudley

Defendants' evidence tends to show the following:

The property in question is mostly marsh land. Defendants' father, L. L. Dudley, the alleged predecessor in title owned land north of the property in question where he lived and operated a hunting and fishing lodge or clubhouse. In 1914, he had helped a former owner in the sale of the land to the corporation. In the early twenties stockholders of the corporation and their guests would stay in L. L. Dudley's clubhouse during the hunting season. L. L. Dudley furnished their room and board on a daily or weekly basis. There were no buildings on the property in dispute. In about 1925, some of the stockholders in the corporation attempted to move an old Coast Guard station onto the property but soon abandoned that project. L. L. Dudley erected duck blinds on the property and these were used by some of the stockholders or guests. The stockholders and guests of the corporation did not visit or make other use of the property after 1929. In 1930, L. L. Dudley erected a two-story house on the property from material salvaged from the old Coast Guard station. The house was used by guides and other employees of Dudley. He also rented the house to others. The last tenant was W. L. Cogswell who lived there about 15 years until his death in 1968. Dudley built roads over the property and barred access to those he did not want on the property. Dudley erected a number of concrete duck blinds and placed posted signs on the property. The duck blinds were licensed in his name. He fenced part of the property and raised cattle, goats and sheep. He used all of the land commercially. During hunting season he employed guides to take hunting parties out on the property. He advertised his hunting facilities in a magazine and distributed advertising folders. He dynamited a ditch about 200 yards long across part of the property. After the hunting seasons he trapped muskrats and other animals for commercial purposes. Each year he burned over the marshy areas of the property to make it more desirable for hunting. Hunting on the land was allowed only by permission from L. L. Dudley. Dudley used the land for about the only purpose that the nature of the property would permit.

On 1 July 1929, Dudley purchased the tax lien on the property at a tax sale in 1929. Dudley and his successors paid the taxes on the property up to the time this action was started. The property was listed on the tax records as "Deals Island Club, L. L. Dudley, Agent" until 1965 when it was changed to

"Dudley, Garland Walters, et al." L. L. Dudley's son testified, "My father was never an employee of anyone . . . he was never an employee or agent of anyone. He was not a caretaker for anyone. . . ."

On 23 April 1952, L. L. Dudley as "owner" conveyed a right-of-way easement across the land to Virginia Electric and Power Company.

After L. L. Dudley died in 1958 his sons stayed in possession of the property and continued essentially the same use of the property. The sons subsequently leased the land to others.

The deed from defendants to Cogswell and from Cogswell back to defendants was executed upon the advice of a Virginia attorney "who has been disbarred" so that it could be entered in the record.

To show the notoriety of L. L. Dudley's possession, defendants produced several witnesses who testified that it was generally reputed that L. L. Dudley owned the land. Around 1930, Dudley told his friends that he owned the land and had bought it at a tax sale.

Plaintiffs then offered evidence in rebuttal tending to show that from the time the corporation bought the property until about 1919, L. L. Dudley was employed by the corporation as a salaried caretaker of the property. Thereafter, Dudley was still employed as a caretaker. Instead of receiving a cash salary, however, he was allowed to use the property in return for taking care of it and paying the taxes.

*J. Kenyon Wilson, Jr., for plaintiff appellants.*

*Leroy, Wells, Shaw, Hornthal, Riley & Shearin, P.A., by Dewey W. Wells and Norman W. Shearin, Jr., for defendant appellees.*

VAUGHN, Judge.

**[1, 2]**   Plaintiffs contend that the evidence, as a matter of law, was insufficient to allow the jury to consider defendants' claim of title by adverse possession and urges, therefore, that it was error to deny their motions for directed verdict and judgment notwithstanding the verdict. The thrust of plaintiffs' argument appears to be that there was no evidence that defendants' possession was hostile so as to rebut the presumption that it was

subordinate to owner's legal title. We disagree. The evidence was conflicting. Plaintiffs offered evidence tending to show that L. L. Dudley took possession as an agent or employee of the corporation and that his possession was permissive. Defendants' evidence was to the contrary. Conflicts in the evidence and in the inferences arising thereon were for the jury under appropriate instructions from the court. *Chambers v. Chambers,* 235 N.C. 749, 71 S.E. 2d 57. We have reviewed the judge's charge and find that he fully and accurately declared and explained the law arising on the evidence given in the case. Among other things, the court correctly charged the jury that if defendants' predecessor entered into possession with the permission of the owner that possession would not be adverse until he disclaimed such arrangement in such manner as to put the owner on notice that he was no longer using the land by permission, but was claiming it as absolute owner. *Board of Education v. Lamm,* 276 N.C. 487, 173 S.E. 2d 281.

[3] Plaintiffs contend that it was error to admit the notice of sheriff's levy and certificate of tax sale. We cannot sustain the contention. The parties stipulated that the documents were genuine and, if relevant and material, could be received without further identification or proof. The documents were relevant to show the hostile interest with which L. L. Dudley possessed the land and the notoriety of that possession.

[4] Plaintiffs also contend that it was error to admit evidence of declarations of L. L. Dudley to the effect that he had bought the land and that it "belonged to him." At the time Dudley is reported to have made the declarations he was in possession of the land and they were, therefore, admissible to show that he claimed to possess as the real owner.

[5] One of the witnesses for defendants testified that L. L. Dudley "signed an easement" across the property and this is the subject of another of plaintiffs' exceptions. We see no error prejudicial to plaintiffs. It was stipulated that the document was genuine and it was introduced into evidence.

We have carefully considered all of the assignments of error brought forward by plaintiffs. The case was well tried by able counsel before a fair and impartial judge. We find no

error that would justify this Court in disturbing the solemn verdict of the jury.

No error.

Judges MARTIN and CLARK concur.